Paul D. Ticen (SBN 024788)
**PAUL TICEN LAW**
3195 South Price Road, Suite 148
Chandler, Arizona 85248
Tel: (480) 646-9382
Fax: (480) 420-3825
paul@paulticenlaw.com

Andrew J. DeFusco (SBN 013200)
**DEFUSCO LAW, P.L.C.**
6945 E. Sahuaro Drive, Suite 125
Scottsdale, Arizona 85254
Telephone: (480) 970-3000
Facsimile: (480) 970-3001
E-Mail: info@defusco1aw.com

Counsel for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ABBY M. HUOT, an individual,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NOBO PRODUCTIONS, INC.,<br>a Florida corporation,<br><br>　　　　　　　Defendant. | NO: _____<br><br>**COMPLAINT**<br><br>(Invasion of Privacy – False Light;<br>Declaratory Judgment)<br><br>(Jury Trial Demanded) |

Plaintiff Abby M. Huot alleges as follows:

**NATURE OF THE ACTION**

1.  This action seeks claims for relief against Defendant NOBO Productions, Inc. arising from its unauthorized use of an image of Plaintiff in the miniseries entitled

1

"Gunther's Millions" that it produced and distributed to the public via the Netflix digital platform.

2. The claims for relief include declaratory judgment and invasion of privacy (false light).

**PARTIES**

3. Plaintiff Abby M. Huot ("Plaintiff") is an unmarried woman who resides in Maricopa County, State of Arizona.

4. Defendant NOBO Productions, Inc. ("Defendant") is a Florida corporation with principal places of business in El Portal, Florida and Los Angeles, California.

**JURISDICTION**

5. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because diversity of citizenship exists and the matter in controversy exceeds the sum of $75,000.

6. The Court has specific personal jurisdiction over Defendant, who purposely directed its conduct toward the State of Arizona, namely, using the image of Plaintiff, an Arizona resident, without her consent and without a lawful basis, in a miniseries that it produced and distributed to the public in Arizona and worldwide via the Netflix platform. This action is based upon activities that arise out of or relate to these contacts.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3).  Under § 1391(b)(2), a substantial part of the events or omissions giving rise to the claim occurred in Arizona.  The image used by Defendant in Gunther's Millions is of an Arizona resident that was taken by an Arizona photographer; Plaintiff saw her image being used in Gunther's Millions while at her residence in Arizona; and Plaintiff experienced the injuries protected by an Arizona false light claim. Alternatively, as noted in ¶ 5, this Court has specific jurisdiction over Defendant and therefore venue is proper at a minimum under § 1391(b)(3).

## FACTUAL BACKGROUND

### Abby M. Huot

8. Between approximately 2007 and 2016, Plaintiff was a fitness model and competitor. She worked with tireless discipline and dedication to develop a positive reputation within the fitness industry.

9. During this timeframe, Plaintiff gained modeling agency representation, performed in nine fitness competitions and modeled for various fitness and lifestyle related photoshoots.

10. Plaintiff was extremely careful and conscious about how she presented herself in photographs and images. She became very selective with whom she worked, and established strict rules that the photographs and images of her focus on representing a balance of feminine strength and glamour while steering away from overtly sexual poses.

11. Photographs and images of Plaintiff were published in a variety of lifestyle and fitness related publications.

12. In 2012, Plaintiff hired Sarah Lyons, a well-known fitness photographer, for a fitness photoshoot.

13. Sarah Lyons, who at all material times was a citizen of Arizona, was at all material times the sole owner of PictureGroove Photography, an Arizona limited liability company.

14. Plaintiff desired Ms. Lyons take photographs of her to promote herself as both a fitness competitor and model, as well as a writer within the fitness community.

15. Coinciding with Plaintiff's fitness modeling and competitions, Plaintiff was developing her career as a writer and began being featured in printed and online publications.

16. Plaintiff's writings were featured in Natural Muscle Magazine, Status Fitness Magazine, Fit Figures Magazine and World Physique Magazine, and she attained a full-page spread in Oxygen Magazine, which was the top women's fitness magazine at the time.

17. Based on Plaintiff's writing talent and the evolution of her reputation of writing real-life and relatable content, Plaintiff began being noticed by top editors within the fitness industry.

18. Around January 2013, Plaintiff was hired as a contributing writer for the website *bodybuilding.com*, which was the top fitness website in the world at that time.

19. For her debut article, Plaintiff wrote an article entitled *Be Your Own Trophy: 7 Tips for Surviving Physique Contests*.

20. For her debut article, Plaintiff selected an image from her photoshoot with Sarah Lyons to be featured as her centerpiece image for the article ("Plaintiff's Image").



21. Plaintiff's Image had significant emotional value to Plaintiff and she had patiently waited to use it for the right opportunity with a larger publication.

22. Plaintiff's Image had not yet been published anywhere, which was an industry standard in connection with digital or printed content.

23. Plaintiff received permission from Sarah Lyons to use and publish Plaintiff's Image without the PictureGroove watermark for her debut article and solely on the *bodybuilding.com* website.

24. On March 19, 2013, Plaintiff's article was published to the *bodybuilding.com* website.



25. Plaintiff was extremely proud of her article and Plaintiff's Image, both which encapsulated her character and desire to overcome adversity, her willingness to work hard and her display of feminine strength, and having the opportunity to have her work seen by a larger audience.

26. On May 5, 2017, the article was republished by *bodybuilding.com* following a website redesign.



27. In 2016, Plaintiff retired from being a fitness model and competitor, and thereafter expanded her writing career beyond the fitness industry.

28. Despite some brief and limited notoriety within lifestyle and fitness circles during the aforementioned time-frame, Plaintiff remained anonymous to the public at large.

29. In 2017, Plaintiff relocated to Arizona and continued the new phase of her writing career.

**Gunther's Millions**

30. On February 1, 2023, Defendant's four-episode miniseries entitled "Gunther's Millions" was first released and distributed to a worldwide audience via the Netflix platform.

31. Gunther's Millions portrayed a German Shephard named Gunther that purportedly had inherited between $400 and $500 million via a trust bequeathed by a German countess.

32. In the miniseries, the trust was administered by an eccentric middle-aged man named Maurizio Mian.

33. In the miniseries, it was ultimately revealed that there was no German countess but instead Maurizio fabricated a story of the German countess and trust as a mechanism to avoid paying taxes on his own fortune.

34. In the miniseries, Maurizio used funds from the trust to purchase expensive homes, sports teams, night clubs, and to fund a so-called science experiment where a group of young, attractive and promiscuous individuals consisting of two males and three females lived together in a mansion purchased by the trust.

35. In the miniseries, these five "genetically perfect people" were placed together for "planned mating" and were encouraged to have uninhibited sexual intercourse with one another to "procreate and have [genetically perfect] children" with the goal to "create a superhuman race."

36. Episode three of the miniseries entitled *In Dog We Trust* ("Episode 3") detailed this so-called science experiment, by which Maurizio essentially used a sex cult to conduct his desired eugenics experiment cloaked under the pretext of science.

37. In four separate scenes of Episode 3, Defendant used Plaintiff's Image and photoshopped it so it appeared with two other females and two males ("Episode 3 Image").


(6 minutes, 40 seconds)


(15 minutes, 4 seconds)

 

(17 minutes, 29 seconds)            (26 minutes, 28 seconds)

38. The use of five young and physically attractive individuals, including Plaintiff, was in connection with references to creating a new "superhuman race," and was unmistakably to associate the Episode 3 Image with the five individuals involved in the eugenics sex cult.

39. Episode 3 contained numerous other references to conduct and activities that were highly offensive and abhorrent.  For example:

- One member of the sex cult, Fabrizio, bragged about Maurizo's wife "[giving him] a blow job in the bathroom" (10:40-10:50);

- Maurizio stated "[w]e are inviting persons to experiment to…you know, that's the Lebensborn method. But that was Himmler. That was Nazi." (17:05 – 17:15);

- Fabrizio also bluntly stated that Maurizio's sex cult was really about Maurizio having "hired five losers to f*** each other" (18:42 – 18:48).

40. Shortly after the release of Gunther's Millions, Plaintiff began watching the miniseries.

41. On or about February 3, 2023, Plaintiff watched Episode 3.

42. Plaintiff was emotionally distressed, humiliated, shocked, embarrassed and upset to see Plaintiff's Image used without her permission in the context that it was used.

43. Plaintiff immediately contacted Sarah Lyons to inquire whether Ms. Lyons was aware that Plaintiff's Image was used in Gunther's Millions, and whether Ms. Lyons had granted permission to Defendant for such use.

44. Ms. Lyons responded that she was not aware and was equally shocked and disturbed, and that she had not granted permission to Defendant or any third party to use Plaintiff's Image in Gunther's Millions.

45. Further, Ms. Lyons indicated that had she been asked for permission by Defendant or a third party to use Plaintiff's Image in Gunther's Millions she would have never granted it given the context of the use.

## FIRST CLAIM FOR RELIEF
## (Declaratory Judgment – 28 U.S.C. § 2201)

46. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

47. Under 28 U.S.C. § 2201(a), in a case of actual controversy within its jurisdiction, a court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

48. An actual or justiciable controversy exists between the parties whether Defendant was granted valid permission and/or had a lawful basis to use Plaintiff's Image multiple times in Gunther's Millions.

49. Plaintiff requests, and is entitled to, a declaratory judgment from this Court that (1) Defendant was never granted valid permission to use Plaintiff's Image in Gunther's Millions and (2) Defendant had no lawful basis to use Plaintiff's Image in Gunther's Millions.

50. Plaintiff demands a trial by jury.

**SECOND CLAIM FOR RELIEF**

**(Invasion of Privacy – False Light)**

51. All of the allegations contained within the paragraphs above and below are hereby incorporated by reference as if fully set out herein.

52. Defendant, through its officers, directors, managers, employees and/or agents, by using Plaintiff's Image multiple times in Episode 3, knowingly, recklessly and/or negligently made, said or wrote a public statement about Plaintiff that created a false impression, false association and/or innuendo about Plaintiff that she was involved, associated or had a connection with a sex cult and eugenics experiment and otherwise portrayed Plaintiff in an abhorrent, promiscuous and overtly sexual manner.

53. The nature and circumstances of Defendant's use of Plaintiff's Image in Gunther's Millions that created the false impression, false association and/or innuendo would be highly offensive to a reasonable person.

54. Defendant failed to use reasonable care and/or acted recklessly in determining whether its use of Plaintiff's Image would create a false impression, false association and/or innuendo about Plaintiff.

55. Defendant's use of Plaintiff's Image caused Plaintiff to suffer damages, including emotional distress, humiliation, inconvenience, and anxiety already experienced and reasonably probable to be experienced in the future.

56. By using Plaintiff's Image in the context that it was used in Episode 3 of Gunther's Millions, Defendant, through its officers, directors, managers, employees and/or agents, acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that the aforementioned conduct would cause injury to Plaintiff; alternatively, Defendant, through its officers, directors, managers, employees and/or agents, pursued this course of conduct knowing that it created a substantial risk of significant harm to Plaintiff.

57.  Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests this Court to grant relief in her favor and against Defendant as follows:

A.  For a declaratory judgment under 28 U.S.C. § 2201 that (1) Defendant was never granted valid permission to use the image of Plaintiff in Gunther's Millions and (2) Defendant had no lawful basis to use the image of Plaintiff in Gunther's Millions.

B.  For actual damages sustained by Plaintiff for emotional distress, humiliation, inconvenience, and anxiety already experienced and reasonably probable to be experienced in the future;

C.  For punitive damages in an amount to be proven at trial;

D.  For post-judgment interest from the rendering of the verdict until the judgment is satisfied; and

E.  For such further relief as this Court deems just and proper.

Dated this 3rd day of October 2023.

**PAUL TICEN LAW**

By    /s/ Paul D Ticen
Paul D. Ticen
3195 South Price Road, Suite 148
Chandler, Arizona 85248
Counsel for Plaintiff